## THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*

*v.*

## CHARLES E. LIPPINCOTT, Auditor, etc.

CONSTITUTION OF 1870—*construction of section* 18 *of article* 4. Section 18 of article 4 of the constitution of 1870 contains the following provisions: " Each general assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session;  *  *  *  *  *  and all appropriations, general or special, requiring money to be paid out of the State treasury from funds belonging to the State, shall end with such fiscal quarter:" *Held*, that, under a proper construction of the above language, the time intended to be fixed by the convention when all old or standing appropriations existing by virtue of laws in force at the adoption of the constitution should cease, unless repealed by legislative enactment, was the end of the first fiscal·quarter after the adjournment of the second regular session of the general assembly held after the adoption of the constitution.

The question involved in this case arises upon the following petition, to which a demurrer was filed by the defendant:

*To the Honorable the Justices of the Supreme Court, at the term begun and held at Ottawa on the second Tuesday of September, A. D.* 1872:

Respectfully represents unto your Honors, Norman L. Freeman, of the county of Sangamon, and State of Illinois, that on the first day of March, A. D. 1869, he was appointed by your honorable court Reporter of the Decisions thereof, which said office was accepted by him and he duly qualified as such Reporter, and which said office he still holds and performs the duties incident thereto ; that, under the statute in such cases made and provided, it is the duty of your petitioner to deliver to the secretary of State of said State of Illinois, as soon as convenient after publication, such number of copies of the respective volumes of the reports of said court as may be necessary to enable said secretary to distribute the same in the manner provided by law; that said number now

required by law is five hundred and seventy-two ; that upon such delivery of said volumes of said reports to said secretary, it is the duty of said secretary to deliver to your petitioner a certificate, specifying the number of copies of the said reports which shall have been so delivered to him, and on presentation of said certificate to the auditor of public accounts of the said State of Illinois, it is, by the law in such cases made and provided, the duty of the said auditor to issue to your petitioner his warrant on the treasury of said State for said number of copies of said reports so delivered, at the price of six dollars per volume.

Your petitioner further represents that, as such Reporter, on the second day of September, A. D. 1872, he delivered to the said secretary of State ten copies or volumes of the fifty-fifth volume of said reports, which said ten volumes completed the number of said volume fifty-five, and not before then delivered, of the quality and style as required by law, and which said copies were duly accepted by said secretary of State, and by whom a certificate was given therefor to your petitioner, in the manner required by law as aforesaid; that on said second day of September, A. D. 1872, your petitioner presented said certificate to Charles E. Lippincott, auditor of public accounts of said State of Illinois, at his office, in the city of Springfield, in said State, and demanded that he issue to your petitioner his warrant on the treasury of said State for the sum of sixty dollars, being the price of said ten volumes at six dollars per volume, which said auditor refused then and there to do, and since wholly refuses so to do, alleging that the law under which your petitioner has been delivering the said reports to the said secretary of State had been repealed by the 18th section of article 4 of the constitution of the said State of Illinois.

Wherefore, your petitioner prays your Honors to grant a writ of *mandamus*, under seal of this court, directed to the said Charles E. Lippincott, auditor as aforesaid, commanding

17—64TH ILL.

258    THE PEOPLE *ex rel. v.* LIPPINCOTT, ETC. [Sept. T.,

Opinion of the Court.

him forthwith to issue and deliver to your petitioner his warrant on the treasury of said State of Illinois for the said sum of sixty dollars, for the price of said ten volumes of said reports so delivered as aforesaid, and for such other and further relief in the premises as to your Honors shall seem meet, and as to right and justice may appertain; and as in duty bound, your petitioner will ever pray, etc.

Messrs. ROBINSON, KNAPP & SHUTT, and Mr. W. C. GOUDY, for the relator.

Mr. WASHINGTON BUSHNELL, Attorney General, for the respondent.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The relator prays for the writ of *mandamus* to be directed to the auditor, commanding him to issue his warrant upon the treasury for the price of the printed volumes of the reports of this court, in conformity to the certificate of the secretary of State.

It has been stipulated between the parties that the fiscal year begins on the first Monday of December in each year, and that the first fiscal quarter after the adjournment of the last regular session of the general assembly ended on the 31st day of August, 1872.

The only question submitted for decision is whether section 18 of article 4 of the constitution has abrogated all laws in regard to appropriations for the payment, by the State, for reports of the opinions of this court.

The portion of the constitution which has any application is as follows: " Each general assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session; * * * * * and all appropriations, general or special, requiring money to be paid out of the State

treasury, from funds belonging to the State, shall end with *such* fiscal quarter."

The statutes requiring the reporter to prepare, publish and deliver to the secretary of State a certain number of the reports, and authorizing him to receive his compensation therefor by a warrant drawn upon the treasury by the auditor, are still in force, unless repealed by the foregoing provision of the constitution.

It is evident that the convention intended that all old appropriations, whether general or special, should cease at some time in the future. It is equally manifest that they did not cease at the adoption of the constitution. The provision in relation to their termination was therefore prospective.

What time, then, was fixed at which they should end? There can be but two constructions: one that they ended with the first fiscal quarter after the adjournment of the last regular session of the general assembly; the other that they do not end until the first fiscal quarter after the adjournment of the next regular session.

The first construction would involve an absurdity. It would be ruinous to the operation of the government of the State; close up the doors of every department, and deprive all executive and judicial officers, who are paid out of the treasury, of any right to draw their salaries.

The convention, in the adoption of this article, designed to establish a rule for future guidance. It spoke with reference to general assemblies to be held under the constitution about to be framed. "Each general assembly shall provide," etc. has sole reference to a general assembly to be elected after the adoption of the constitution. No torture of the language can make the article refer to past legislatures. The words "next regular session" presuppose a prior session. It would be absurd to suppose that the convention intended the prior session to be one held under the constitution of 1848, without express words to indicate the intention. It was acting for the future—making provision to guide future sessions; and

in the use of the words "next regular session," the session immediately succeeding the first under the constitution about to be made must have been contemplated.

The contrary interpretation would lead to serious consequences, and would be the substitution of the word "first" for "next" in the phrase "next regular session." If these words mean the last regular session which has expired, then the first fiscal quarter contemplated in the section has also expired. "Such (or the same) fiscal quarter" must necessarily refer to the one named in the preceding part of the section. Logically, then, "all appropriations, general or special," have ended. The words are broad enough to include all appropriations for the ordinary and contingent expenses of the State government; and hence, all appropriations made by the last general assembly terminated on the 31st of August, 1872. Such is the inevitable conclusion. The fact that the law has appropriated money for the expenses of the State government, until the expiration of the first fiscal quarter after the adjournment of the next regular session, can not remove the dilemma, for the constitution has otherwise declared.

It can not be readily seen how such a misinterpretation of the section could have been conceived. The language is plain and the intention clear. As to the meaning of the first clause in the article, there is no shadow of doubt. It is conceded that the fiscal quarter therein mentioned is the one immediately succeeding the adjournment of the next session—the session to commence in January, 1873—for that will be the "next regular session" within the purview of the constitution. One only has been held under the instrument, and the second session must be the "next regular session." The last clause provides that all appropriations, general or special, shall end with the same fiscal quarter.

If, then, the fiscal quarter first mentioned does not expire until after the next regular session, and general as well as special appropriations do not end until the same quarter, the

appropriation under consideration must continue and subsist until that time.

This interpretation we regard as correct, and right and just, when we consider the character of the appropriation preserved. The distribution of the reports to the President of the United States and to the executive of each State, is an act of comity which should be continued, and particularly as each State interchanges with us; and the distribution to the officers of the executive department of the State, to the courts, public libraries, to the Attorney General and other officers, is due from a great State to those who administer its laws.

We are aware of no mischief to result from our construction. The obnoxious special laws which were enacted to provide compensation for the executive and judicial officers of the State, have all, we apprehend, been repealed by legislation of the past session, which gives more ample remuneration to these officers.

So far as our examination has extended, the Reporter alone, who is now a constitutional officer, has been unprovided for.

The peremptory writ of *mandamus* is awarded.

*Mandamus awarded.*