THE PEOPLE *ex rel.* John D. Caton *et al.*

*v.*

THOMAS B. NEEDLES, Auditor.

*Filed at Ottawa November 17, 1880.*

1. CONSTITUTIONAL LAW — *lapsing of appropriations — Douglas monument.* The legislature, in 1877, made an appropriation of $50,000 for the completion of the Douglas monument at Chicago, to be paid out of the treasury as the work progressed. In December, 1878, there remained undrawn of the appropriation $8648, and the commissioners appointed to complete the work, reported that fact, and that it would require a further sum of $9000 to complete the same. In May, 1879, the legislature appropriated the additional sum asked. On the 30th day of September, 1879, all of the first appropriation was drawn except $4798, and nothing from the $9000 one. After September 30, 1879, and up to July 1, 1880, the commissioners had drawn $8450. when they drew for $1200 for which the Auditor refused to draw his warrant: *Held*, on application for a *mandamus* against the Auditor, that under sec. 18, art. 4, of the constitution, the $4798, balance of the first appropriation, had lapsed and could not be taken from the treasury, by reason of the expiration of the first fiscal quarter after the adjournment of the regular session of the General Assembly succeeding that at which the appropriation was made.

2. The provision of sec. 18, art. 4, of the constitution, that all appropriations, general or special, requiring money to be paid out of the State Treasury, from funds belonging to the State, shall end with the first fiscal quarter after the adjournment of the next regular session of the legislature, is not confined to appropriations for the ordinary and contingent expenses of the Government, but applies to all appropriations of the public money.

This is a petition by John D. Caton, Thomas Drummond, Lyman Trumbull, Robert T. Lincoln, Potter Palmer, Ralph Plumb, B. F. Fridley, Gustavus Kœrner, and Melville W. Fuller, against Thomas B. Needles, Auditor of Public Accounts, for a writ of *mandamus* to compel him to draw his warrant for $1200 on the State Treasury, out of money not otherwise appropriated, as directed by the certificate of a majority of the relators, and also for his warrants, from time to time thereafter, upon like certificates, to the extent of the balance remaining undrawn of the total sum of $59,000.

Mr. MELVILLE W. FULLER, for the relators:

The General Assembly of 1879 adjourned in May of that year, and the fiscal quarter succeeding that adjournment expired September 30, 1879, at which time nothing had been drawn from the $9000 appropriation, and $4798 remained undrawn from the original appropriation of May, 1877, but the commissioners had not the power to certify for either of these sums on or before September 30, or any part thereof, because the money was not *then* needed in the progress of the work, and they could only certify as the work progressed.

The act of May, 1879, amounted to a re-appropriation of the balance of the original appropriation unexpended at the time of the passage of said act. The preamble of an act may be resorted to in ascertaining the true intent and meaning of the legislature. *Edwards* v. *Pope*, 3 Scam. 465; Story on Const. U. S. sec. 459; *Elmendorf* v. *Carmichael*, 4 Litt. 47; *Rex* v. *Sutton*, 4 M. and Sel. 532; *Dukedom of Sussex*, 8 Lords Jur. 795; *Tonnele* v. *Hall*, 4 Com. 140; *Furman* v. *City of New York*, 5 Sandf. 16.

As to the rules for the construction of statutes, counsel referred to *Turney* v. *Wilton*, 36 Ill. 385; *Spring, etc. Works* v. *San Francisco*, 22 Cal. 434; *Sika* v. *Chicago, etc. R. R.* 21 Wis. 370; *People* v. *Thurber*, 13 Ill. 554; *Wood* v. *Blanchard*, 19 id. 37; *Johnson* v. *Bush*, 2 Barb. Ch. 207; *Crocker* v. *Cram*, 21 Wend. 217; *Castner* v. *Walrod*, 83 Ill. 178.

Section 18 of art. 4 of the constitution does not apply to a case like the present, but relates to the ordinary and contingent expenses of the State Government.

Mr. JAMES K. EDSALL, Attorney General, for the respondent.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

In May, 1877, an act passed, appointing J. D. Caton and others, "Commissioners of the Douglas Monument at

Chicago," and authorizing them to complete the monument, but limiting their power "to obligate the State" to the amount named in section 3 of the act.

Section 3 of the act appropriated $50,000 out of the State Treasury, for defraying the cost of the completion of the work, and authorized the Auditor to draw his warrant therefor, upon the certificate of a majority of the commissioners, "from time to time during the progress of the work."

The commissioners proceeded with the work, but found the amount inadequate, and in December, 1878, reported to the Governor that they had drawn $41,352, and that $8648 of the appropriation remained undrawn, and that it would require a further appropriation of $9000 to complete the work and care for the grounds "for the ensuing two years."

This report was communicated to the General Assembly by the Governor, and by one of its houses was caused to be printed. Afterwards an act was passed which, on May 29, 1879, was approved by the Governor, which, with its title and preamble, was as follows:

"An act to appropriate Nine Thousand Dollars ($9000) for the completion of the Douglas Monument at Chicago." Approved May 29, 1879.   In force July 1, 1879.

"*Whereas*, it appears from the report of the Commissioners to complete the Douglas Monument at Chicago, that said commission was compelled to remove and rebuild the substructure thereof, requiring an expenditure not anticipated at the time of the passage of the act creating said commission, and necessitating a further appropriation, therefore,

"SECTION 1.   Be it enacted by the People of the State of Illinois, represented in the General Assembly, That the sum of nine thousand dollars ($9000) be and the same is hereby appropriated for the completion of said monument, and the Auditor of Public Accounts is hereby authorized and directed to draw his warrant on the State Treasury for said amount, out of money not otherwise appropriated, upon the certifi-

cate of a majority of the said commissioners from time to time, as the same may be needed."

The commissioners thereafter proceeded with the work and drew further sums from time to time, and on the 30th day of September, 1879, there still remained of the original appropriation of $50,000, undrawn and in the treasury, the sum of $4798, and nothing had been drawn from the $9,000 mentioned in the latter act named.

After the 30th of September, 1879, the commissioners continued the work and from time to time drew from the treasury sums amounting to $8450, before the 1st day of July, 1880. On that day, the sum of $1200 being necessary in the progress of the work, the commissioners made the necessary certificate therefor to the Auditor, but he refused to draw his warrant therefor, upon the ground that on the 30th day of September, 1879, the sum of the then undrawn part of the original appropriation (of $50,000) being the sum of $4798, *had lapsed,* under sec. 18, of art. 4, of the State constitution. That section is as follows:

"§ 18. Each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, the aggregate amount of which shall not be increased without a vote of two-thirds of the members elected to each house, nor exceed the amount of revenue authorized by law to be raised in such time; and all appropriations, general or special, requiring money to be paid out of the State treasury, from funds belonging to the State, shall end with such fiscal quarter."

This is an application for *mandamus* to compel the Auditor to issue his warrants from time to time, until the work is completed, up to the sum of $59,000 in all.

The only question arising in this case is, did that part of the original appropriation (of $50,000) which was undrawn on the 30th of September, 1879, lapse, or did that appropriation

remain effective after that date as to the portion thereof not drawn at that time.

We think the position taken by the Auditor is correct. By the express language of the constitution, "all appropriations, general or special, *requiring* money to be paid out of the State treasury, from funds belonging to the State," shall end with the first fiscal quarter after the adjournment of the next regular session of the General Assembly.

It is suggested that this language should be construed as applicable only to " appropriations necessary for the ordinary and contingent expenses of the government;" that being the subject matter of the section. It is true the first clause of the section relates only to that class of appropriations; and there would be force in the suggestion were it not for the introduction of other words, in defining the subject matter of the latter clause of the section which expressly embraces " all appropriations requiring money to be paid out of the State treasury *from funds belonging to the State.*"

This is a wholesome provision of the constitution and it ought not to be frittered away by construction. It is better to submit to some inconveniences than that a safeguard of the constitution so valuable should be impaired in the least.

It is also suggested that by a true construction of the act of May 29, 1879, the unexpended balance of the appropriation of 1877 was re-appropriated. There is some plausibility in this suggestion, but we find no reasonable or necessary implication in the language used by the General Assembly to support the suggestion.

The title of the act is merely an act " to appropriate $9000 " for the purpose in question; and in the body of the act no words are found indicating an intention to do more than appropriate the $9000 in question. True, in the preamble are words alluding to the former appropriation, and speaking of this as " a further appropriation." The utmost effect of these words was to leave the first appropriation unaffected by the passage of this act. There is no intimation in the report

of the commissioners on which the General Assembly acted, or in the language used by the General Assembly in the preamble of the second act, that the amount of the first appropriation which remained undrawn in December, 1878, would not be drawn and used in the progress of the work by September 30, 1879. If such a contingency had been anticipated with an intention to provide for it by a re-appropriation, we think words more definite would certainly have been employed for the purpose. If the time for the lapsing of the first appropriation had gone by before the passage of the second act, the recognition of the first appropriation, as then in force, would have presented a very different question. After a careful consideration we hold that the writ of *mandamus* ought not to be issued.

*Mandamus denied.*