. BRADLEY D. GREENMAN *et al.*

*v.*

SARAH A. GREENMAN.

*Filed at Ottawa September 28, 1883.*

1. LIMITATIONS—*in equity.* While the Statute of Limitations does not strictly apply to cases in equity, still equity generally follows the law, and denominates the period the statute will bar, at law, *laches,* that renders a demand stale.

2. SAME—*estoppel by fraud.* The defendant in a suit in chancery to set aside an alleged fraudulent conveyance, and the fraud being established, will be estopped to set up *laches* as a defence..

3. HOMESTEAD—*in wife, not created by a verbal promise of husband to live on lot.* A mere verbal promise of a husband to his wife, while temporarily residing in another State, that they would return and use a house and lot of the former in this State as a homestead, will not create or pass to the wife a right to homestead therein, when they fail to occupy the same as a residence.

4. CONTRACT—*between husband and wife to divide rents of his property, not valid.* The mere naked verbal promise of a husband to his wife to give her one-half of the rents of his real estate, without any consideration, does not create a binding contract, or confer upon the wife the right to sue for and recover one-half of such rents, even in equity.

5.  CHANCERY—*distribution of proceeds of sale—under creditor's bill.*
Where a receiver is appointed, under a creditor's bill, to receive and collect
rents, under an allegation of the insolvency of the debtor, if this is denied
in the answer such rents in the hands of the receiver can not be applied on
the creditor's judgment without proof of the debtor's insolvency, and that
the property subject to levy and sale is not sufficient to satisfy the debt or
judgment.    In the absence of such proof the court should order the receiver
to pay such rents to the defendant—the owner of the land.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. L. DOUGLASS, for the plaintiffs in error:

The fact that defendant in error took no steps to set aside the deed, and failed to give any notice of her rights until she filed her bill, ten years after the date of the deed, is better evidence of its genuineness than the testimony of herself and Pond, depending on their bare recollections. *McPherson* v. *Sanborn*, 88 Ill. 152.

The defence of limitation under the act of 1835 was good, as it shows a title deducible of record from the United States. We need not to have gone back to the deed from the sheriff to A. C. Mason under the execution, which would have furnished such a title as the statute requires. *Collins* v. *Smith*, 18 Ill. 160; *Martin* v. *Judd*, 81 id. 488.

In this State the effect of the limitation is to take away the right of entry and the right of action. *Newland* v. *Marsh*, 19 Ill. 383; *Hinchman* v. *Whetstone*, 23 id. 185; *Jandon* v. *McDowell*, 56 id. 53.

Fraud is no answer to the limitation of 1835. *Castner* v. *Walrod*, 83 Ill. 175.

Under section 8 of the Limitation law of 1839, where there is no proof showing that the color of title was acquired in bad faith, which means in and by fraud, the court will hold it was acquired in good faith. *Coleman* v. *Billings*, 89 Ill.

190; *McCagg* v. *Heacock,* 42 id. 157; *Rawson* v. *Fox,* 65 id. 200; *McCagg* v. *Heacock,* 34 id. 476.

Even if William R. Greenman practiced a fraud on complainant in obtaining her signature to the deed, it ·was just as much color of title without her signature as with it. Limitation bars equitable relief, the same as at law. *Hancock* v. *Harper,* 86 Ill. 445; *Manning* v. *Warren,* 17 id. 267; 2 Story's Eq. Jur. sec. 1520; *Kane* v. *Bloodgood,* 7 Johns. Ch. 89; *Carpenter* v. *Carpenter,* 70 Ill. 457; *Wilhelm* v. *Sayler, Exr.* 32 Md. 151; *Quayle* v. *Guild,* 91 Ill. 38; *Sloan* v. *Graham,* 85 id. 26; *Castner* v. *Walrod,* 83 id. 174; *Wingate* v. *Pool,* 25 id. 102.

Possession was surrendered, and if the deed was not her deed there was no relinquishment of homestead, but a surrender of possession had that effect, even if there was no release. *Hall* v. *Fullerton,* 69 Ill. 451; *Eldridge* v. *Pierce,* 90 id. 480.

Messrs. McKENZIE & CALKINS, for the defendant in error:

The evidence in this case comes clearly within the rule in regard to the impeachment of certificates of acknowledgment of deeds. It has been established by a clear preponderance of evidence. *Meyers* v. *Parks,* 95 Ill. 408; *Lowell* v. *Wren,* 80 id. 238.

The wife can maintain bill for the purpose of holding or recovering a homestead, the object being to protect the family in a home. *Allen* v. *Hawley,* 66 Ill. 169.

The Homestead act was designed for the benefit of the wife and children. *Cassell* v. *Ross,* 33 Ill. 244; *Haskins* v. *Litchfield,* 31 id. 137.

The policy and object of the Homestead act seem to regard her after the divorce, for this purpose, as a widow and the head of a family. *Vanzant* v. *Vanzant,* 23 Ill. 536.

If the husband induced the wife to go to Michigan temporarily, and with the promise that they would return and live

upon this property, and it was her intention to return, it was no abandonment of the homestead. *Orman* v. *Orman*, 26 Iowa, 361; *Kenley* v. *Hudelson*, 99 Ill. 493; *Henson* v. *Moore*, 104 id. 403; *White* v. *Plummer*, 96 id. 395; *Mills* v. *Van Boskink*, 32 Texas, 360; *Henderson* v. *Ford*, 46 id. 627; *Clipperly et al.* v. *Rhodes*, 53 Ill. 346; *Kitchell* v. *Burgwin*, 21 id. 45; *McMillanus* v. *Warner*, 38 Texas, 410; *Wiggins* v. *Chance*, 54 Ill. 175; *Howard* v. *Logan*, 81 id. 383; *Sheppard* v. *Cassidy*, 20 Texas, 24.

The doctrine of adverse possession is to be taken strictly. It must be sustained by clear and positive proof. It must be open and notorious, notifying everybody that one is on the land claiming it as his own, in person or by tenant. It can not be secret, and answer the purpose of notoriety to adverse possession. *Laflin* v. *Harrington* 16 Ill. 301; *Jackson* v. *Berner*, 48 id. 203; *Busch* v. *Huston*, 75 id. 343.

This question of good faith is one of fact, and must receive a practical, common-sense construction. *Winter* v. *Haines*, 84 Ill. 583; *Hardin* v. *Crate*, 78 id. 533.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed in the Knox circuit court, by defendant in error, to establish a right of homestead in a lot of ground, and to remove conveyances of the lot as fraudulent, and as obstructions to its sale on a judgment at law. She claims that she and her husband entered into possession of the property, and occupied it as a homestead until they went, temporarily, to Michigan; that whilst so in possession, William R. Greenman, then her husband, forged a deed from him and herself, conveying the property to his son George H. Greenman, who afterwards conveyed it to Bradley D., another son, and he conveyed to Sidney Rogers, without any consideration. Subsequently she filed a supplemental bill, alleging the recovery of a judgment against William R.

Greenman for the sum of $2846.39, which was obtained in a suit in attachment, in which this land was levied on; that he was insolvent, and prayed that a receiver be appointed, and that the interest of defendant William R. Greenman be determined, and subjected to the payment of her judgment. It appears that after they had remained some time in Michigan, she filed a bill for a divorce from her husband, William R. Greenman, which was granted, and she was decreed alimony, and the custody of their child. On a hearing in the circuit court she was decreed a homestead in the property, half of the rents in the hands of the receiver, and the other half was required to be applied as a payment on the judgment, and to have the possession of the property, and that it be sold to satisfy the judgment, but subject to her homestead rights. The case is brought to this court to reverse that decree.

That there was a plan deliberately adopted by William R. Greenman, aided and assisted by his sons, to defraud defendant in error by hindering her in the collection of alimony, seems to be established beyond dispute. He agreed, on going to Michigan, that the stay should be temporary,—only until a farm was put in repair,—and they would then return to and live in Galesburg. This he never did. He also agreed that they would divide the rents of the house and lot in controversy, but they never did. The evidence clearly establishes that all the conveyances were fictitious, and without consideration. At the time each of these conveyances was made he was the only active person in their consummation, and unsought and unknown to Rogers he brought the deed from his son Bradley, and wished Rogers to execute a mortgage on the property to secure a fictitious sum as a consideration for the lot, but Rogers refused; but he nevertheless had the deed recorded, and Rogers swears that he paid, or agreed to pay, nothing for the lot. Notwithstanding these pretended sales, William R. was all the time in receipt of

the rents, and controlling the property, and speaking of it as his own, and, so far as the evidence discloses, none of the pretended grantees ever exercised any control over the property, or claimed to own it.   When William R. Greenman offered the deed to Rogers, and when the latter refused to sign a mortgage, Greenman told him to take the property, rent it, and sell it if he could.   Rogers paid nothing, but he, at Greenman's request, entered into an agreement to hold, rent and sell the property, if he could, for Bradley D. Greenman.   Thus at the instance of William R. Greenman, who claimed to be his son's agent, Rogers declared a trust, but, at the same time, Greenman declared that he placed the title in Rogers because he believed it would be more safe.   The evidence satisfactorily shows that the conveyance to George H. Greenman was fraudulent; and without a consideration being paid for the lot.   The consideration named was $1000, as stated in the deed, and George, it is claimed, gave his note for the amount, when the evidence shows that he was without means, and it does not appear he had the slightest use for the property.   The tenants remained in the property without any change, the father still collecting or controlling the rents, as he claims, as agent for George, but George doing or saying nothing in reference to the property.   It remained to all appearances the same as it was before.

It is beyond belief, from the evidence before us, that this could have been a *bona fide* sale.   It is true that the father and son swear it was, but their version of the matter is so incredible that it is difficult to give it credence, if it had not been opposed by the attending circumstances and other opposing testimony.   The evidence proves the same of Bradley D. Greenman's purchase from his brother George.   He had no surplus means, nor does he show any reason for the purchase.   On the contrary, he was constantly importuning his father for money to enable him to pay a considerable sum of money he owed on a farm he had purchased.   Having no

means, and being pressed for means to pay for and acquire title to his farm, it is incredible that he would further involve himself by purchasing this property. Nor is any reason shown why he should have conveyed to Sidney Rogers, and taken from him an agreement to rent or sell it, if he could. On the contrary, his father stated at the time that he had it so conveyed because he considered it more safe. Safer for whom? Surely not for Bradley, because the title stood in him, and by placing it in Rogers, without consideration, it could be no safer to him. But the property, if it belonged in fact to William R. Greenman, might be safer to him, as the written declaration of trust in favor of Bradley was delivered to the father, and there is no evidence which we have been able to find that he ever delivered it to Bradley. William R. seems to have been in a position, if the property was sold, to receive the money, destroy the declaration of trust, and appropriate the price to his own use. Had it assumed the form of ordinary transactions, Bradley, the owner, would have given Rogers a power of attorney to sell and convey, or to have authorized him to sell, and for Bradley to have made the conveyance when a sale was made. It seems that William R. at all times retained the power to sell or have a sale made, and appropriate the money to his own use; and about the time his wife commenced her suit for a divorce, Rogers advised him to let his wife have the house and settle the matter, and asked him how he could prevent his wife from recovering alimony, and he replied he "would fix that." Neither of the sons seems to have given any attention to the property, but the father continued to act as owner, in its management, in receiving and ordering the disposal of the rents, and in making repairs. The sons acted with an incomprehensible indifference in the matter, if they were owners. We are unable to believe they ever, in fact, were,—that the whole was a contrivance to defraud defendant in error, by preventing her from collecting any alimony that might be

allowed her on granting her a divorce. All the evidence,—even with the explanations given by the Greenmans, father and sons,—points unerringly to that conclusion. We find it impossible to believe these sales were *bona fide*, but are forced to the conclusion that they were all conceived and carried out with fraud and covin, and that the property should be subjected to the satisfaction of the judgment for alimony.

But to obviate that effect, it is claimed that the rights of defendant in error are barred by the statutes of limitation of 1835 and 1839. Title deducible of record from the United States government, and actual possession for seven years, are claimed to have been proved; also, claim and color of title, and possession and payment of taxes for seven years on the property. The questions of limitation, under these statutes, have heretofore related to adverse titles, and not as to fraudulent grantees combined or acting together to defraud creditors or persons holding legal demands. The statute was not made, nor was it ever designed to be used, for such iniquitous purposes. It was made to promote the great natural principles of justice, and not to promote and protect fraud and iniquity. Thus it is seen there was not *laches*. The Statute of Limitations does not strictly apply to cases in equity, but equity generally follows the law, and denominates the period that the statute requires to bar an action, *laches*, that renders a demand stale. But the fact that plaintiff in error William R. Greenman, and his sons, were guilty of fraud, estopped them from claiming a bar to the suit, as the fraud precluded him or his fraudulent grantees from relying on *laches* as a defence in equity. A mere verbal promise of his, that he would return, and they would use the lot as a homestead, could not create or pass to her a right to homestead. Nor did his mere verbal promise to divide the rents and profits create a contract by which she could sue and recover them. The mere naked verbal promise, without any consideration,

can not confer such a right when made by a husband to his wife. The land belonged to him. The conveyance by Mrs. Hendricks to plaintiff in error and defendant in error, gave to the latter no interest in the property, because she had no title to convey. It neither gave her a homestead right nor the right to participate in the rents. It was therefore error to decree her homestead or rents under that deed. If it could be allowed her to claim homestead rights because her husband owned the property, she, by her long continued and present absence, forfeited the right. Nor did his promise, when they went to Michigan, to return and occupy the premises as a homestead, confer the right, and we have seen that the promise to divide the rents did not authorize her to participate in them. The court below therefore erred in decreeing her homestead in the premises, and possession thereof, and also in decreeing that she was entitled to one-half of the rents in the hands of the receiver, or otherwise.

But it remains to determine what disposition shall be made of the rents in the hands of the receiver. Inasmuch as it is a fund in the hands of the court, it must be disposed of by order of the court. Shall it be paid to plaintiff in error William R. Greenman, as the owner, in fact, of the property, or Bradley D., the apparent owner, or shall it be applied towards the payment of the judgment? The bill alleges that William R. Greenman is insolvent, and the property is insufficient to pay the judgment. This allegation is denied by the answers. Although the fund is in the hands of the court, still, to make it proper to be applied as a payment on the judgment, it should have appeared that the judgment could not be otherwise satisfied. This is not shown. For aught that appears this property may be ample to satisfy the judgment, and Greenman may be abundantly solvent. The court should have decreed the payment of the rents to him. But in so far as the decree finds Mrs. Greenman holds a homestead title in the property, and is entitled to its pos-

session, and that she is entitled, in her own right, to one-half of the rents, the decree in that respect is reversed, and it is in all things else affirmed.    It is, however, decreed that each party pay one-half of the costs of this court.

*Decree modified.*