## JULY TERM, 1887.

---

PRESENT:

HON. SAMUEL MAXWELL, CHIEF JUSTICE.
" M. B. REESE, } JUDGES.
" AMASA COBB,

22 33
36 584

22 33
20 695

---

THE STATE OF NEBRASKA, EX REL. M. C. BULLOCK
   MANUFACTURING CO., v. H. A. BABCOCK, AUDITOR
   OF PUBLIC ACCOUNTS.

1.  **The Fiscal Year** commences on the first day of December of
    each year.

2.  **Appropriations by Legislature.** The appropriations made
    by the legislature where there is no provision limiting particu-
    lar cases to a shorter period, extend to the end of the first fiscal
    quarter after the adjournment of the next regular session.

3.  ———: SINKING TEST WELL. Where an appropriation was made
    by the legislature of 1885 for the purpose of sinking a well in
    the salt basin, and the legislature of 1887 adjourned *sine die*
    March 31st, 1887, *Held*, That the appropriation of 1885 contin-
    ued in force until August 31st, 1887. *People v. Swigert*, 107 Ill.,
    494; *People v. Lippincott*, 64 Id., 256; *People v. Needles*, 96 Id.
    575, approved and followed.

   3

SUBMISSION of controversy under Sec. 567 of the civil code. The submission was made by *Mr. William Leese, Attorney General.*

MAXWELL, CH. J.

This is an action to compel the defendant to draw a warrant on the treasury for the sum of $1,675.

It is alleged in the petition in substance that in the year 1885 an act was passed by the legislature to provide for the sale and leasing of the saline lands of the state and the development of the saline interests thereof, by which act it was provided that the board of public lands and buildings be required to have all of the saline lands of the state appraised, advertised, and sold, and the funds received therefor to be deposited with the state treasurer, to constitute the saline fund of the state; that for the purpose of procuring a greater supply of brine than naturally flows on the salt basin, it was therein provided that whenever the funds derived from the sale of said saline lands should be sufficient, said board of public lands and buildings was authorized and directed to enter into a contract in behalf of the state for the purpose of sinking a well on such salt basin to such depth as, in the opinion of the board, would best subserve the interests of the state; that said board was authorized to issue vouchers to the contractor as the work progressed, upon which it was the duty of the auditor to draw his warrant upon the treasury against the saline fund for the amount of said voucher; that the sum of $50,000, or so much thereof as was necessary, was appropriated out of the saline fund of the state for the purpose of carrying into effect the provisions of said act; that in pursuance of said act the board of public lands and buildings caused the saline lands to be appraised, advertised, and sold in the manner provided by law, and that lands to the amount of $20,027.50 had been sold, and the money

received therefor placed in the treasury, and said sale was then adjourned; that in January, 1886, said board entered into a contract in writing with the relator, by the terms of which he was to sink a well on said salt basin to the depth of 2,000 feet for the sum of $10,000; that the relator has fully complied with the terms of said contract in each and every particular, and said board has issued vouchers to him to the amount of $9,465.64, upon which the auditor has drawn warrants on the saline fund; that on the 26th day of May, 1887, the relator completed said contract, and on said day the board of public lands and buildings issued a voucher to him for the sum of $1,675.10, which on the 1st day of June, 1887, with an itemized account, was duly presented to the auditor and indorsed by him, "examined but not paid for the reason the appropriation for developing the saline interests of the state, and upon which this claim is drawn, ended, or lapsed, March 31, 1887," and for that reason the defendant refused to draw a warrant; that there is still in the saline fund in the state treasury the sum of $10,563.56; that the amount due the relator under said contract for sinking said well was for labor done and performed after the 31st of March, 1887, and before the 26th day of May thereafter, and that the legislature adjourned March 31st, 1887, etc.

A copy of the contract is attached and made a part of the petition. The contract is carefully drawn, and the rights of the state amply guarded and protected, and it is apparent that both parties have acted in the utmost good faith. The auditor is ready to perform his duty in issuing a warrant, but is in doubt as to the proper construction of the law.

This action is brought under the provisions of section 567 of the code. The question for determination is—at what time the appropriation ceases to be available for the payment of claims on the treasury?

Sec. 19, Art. 3 of the constitution provides that, "each

legislature shall make appropriations for the expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with such fiscal quarter," etc.

Sec. 9, Art. 4, Chap. 83, Comp. St., provides that, "the fiscal year shall commence on the first day of December in each year, and end on the thirtieth day of November in each year."

Sec. 18 of Art. 4 of the constitution of Illinois provides that, "each general assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session * * and all appropriations, general or special, requiring money to be paid out of the state treasury from funds belonging to the state shall end with such fiscal quarter."

In *People v. Lippincott*, 59 Ill., 256, it was held that all appropriations ceased at the end of the first fiscal quarter after the close of a regular session of the general assembly. The question was again before the supreme court of that state in *People v. Needles*, 96 Ill., 575, where a considerable portion of the $50,000 previously appropriated for the completion of the Douglas monument in Chicago had remained undrawn at the end of the first fiscal quarter after the adjournment of the regular session of the legislature. The court held that the constitutional provision applied to all appropriations of the public money, and was not confined to appropriations for the ordinary and contingent expenses of the government. Hence that the unexpended balance of the monument fund had lapsed. And in *People v. Swigert*, 107 Ill., 495, it was held that all appropriations, whether general or special, when otherwise unlimited, continue in force and are available for the purposes intended until the expiration of the first fiscal quarter after the adjournment of the general assembly, at which time all appropriations lapse and cease to be of any validity.

These cases are well considered and arose under a constitutional provision similar to our own. The words in that constitution that "all appropriations general or special" shall end with the fiscal quarter, etc., is no broader than the provision in the constitution of this state that "all appropriations shall end with such fiscal quarter," as the word "all" includes the whole. It is within the power of the legislature to appropriate money for a particular purpose, as to bore a salt well, and require the appropriation to be expended within a specified time less than the end of the fiscal quarter next after the adjournment of the legislature; and the provision is a limitation on its power, beyond which it cannot go. It is evident, therefore, that the appropriation in the case at bar continues to be available for the purpose for which it was made until the end of the first fiscal quarter after the adjournment of the legislature; and as the fiscal year commences on the first day of December of each year, and the legislature adjourned March 31st, 1887, the end of the fiscal quarter next after the adjournment of the legislature would be on August 31st, 1887. It is the duty, therefore, of the defendant to draw a warrant on the voucher set forth in the petition.

In the *Opinion of the Judges*, 5 Nebraska, 566, the question arose under Sec. 30, Art. 2 of the constitution of 1867, which provided that, "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law; and no appropriations shall be made for a longer period than two years." The legislature of 1875 made appropriations for the "current expenses of the years 1875 and 1876," which included an appropriation for the normal school. On the 1st day of November, 1875, the present constitution took effect. The legislature of 1877 made an appropriation for the normal school, which included the quarter in which the session was held. As under the provisions of the constitution of 1867 no appropriation could be made to extend beyond

two years, it necessarily followed that the legislature of 1877 must provide for the payment of claims upon the treasury from the time the former appropriation ceased. The legislature of 1877 was the first that assembled under our present constitution, hence all appropriations prior to that time were made under the constitution of 1867. That case, therefore, has no bearing upon this.

Incidentally the question is raised as to the effect of the appropriation of funds which have been donated to the state for a particular purpose—such as the saline lands for the development of the salt springs of the state. Such funds having been received for a particular purpose and being held in trust by the state, it is claimed that a different rule applies than if they were derived from the ordinary revenues. The question is quite important, and does not properly arise in the case, and should not be decided without an opportunity being given all parties interested to be heard. That question, therefore, will not be considered. A peremptory writ of mandamus will issue as prayed.

JUDGMENT ACCORDINGLY.

THE other judges concur.