(No. 2235. Nov. 21, 1918.)

## STATE ex rel. STEPHENS v. STATE CORPORATION COMMISSION et al.

### SYLLABUS BY THE COURT.

1. The refusal of the State Corporation Commission to draw a voucher for the salary of an employe of the Commission entitles him to resort to the remedy of mandamus,

JANUARY TERM, 1918.                    33

State ex rel. Stephens v. Corp. Comsn., 25 N. M. 32

as the ordinary course of law does not afford a plain, speedy, and adequate remedy.                                    P. 37

2.  Where a legislative appropriation of money is made for contingent expenses of the State Corporation Commission, out of which fund the salary of an assistant rate clerk is properly payable, and suit is filed in mandamus to compel the issuance to such clerk of a salary voucher, and after service on such Commission of the alternative writ such Commission purchases postage stamps for use during the next ensuing fiscal year, and thus expends all the money remaining in such fund, the trial court properly required the issuance of a voucher payable out of the contingent expense fund for the next fiscal year to the extent that such fund was benefited by the use of funds of the previous year out of which such payment should have been made.                                    P. 39

3.  Public officers are liable in costs for any duty they are required by law to perform.                                    P. 44

. Appeal from District Court, Santa Fe County; Holloman, Judge.

Mandamus by the State of New Mexico, on relation of Henry F. .Stephens, against the State Corporation Commission, Hugh S. Williams and another, individual members thereof.  Judgment for plaintiff, and defendants appeal.  Affirmed.

HARRY L. PATTON,·Attorney General, for appellants.

H. S. CLANCY, of Santa Fe, of Counsel.

Peremtory writ of mandamus should not have issued because there was no funds in the treasury subject to draft by the warrant of the auditor.

Garcia v. Bursum, 10 N. M. 43; Terr. ex rel Lester v. Suddith, 15 N. M. 741; Sec. 5342, Code 1915; 6 Wall. 209; High Extra. Legal Rem. Sec. 26; Chicot·County v. Kruse,  47 Ark..85 U. S. v. County of Clark, 95 U. S. 773; Supervisors v. U. S. 18 Wall. 77; Smith v. Aplin, 45 N. Y. 136; Art. 4, Sec. 30, State Const.

Power of Commission in employment of clerks is discretionary and not reviewable.

State v. Gregory, 83 Am. R. 569.

Remedy was improper.

Secs. 5338 and 5339, Code 1915; State ex rel Sittler v. Board of Education, 18 N. M. 183; Portman v. Fish Commissioner, 50 Mich. 2558.

Costs should not have been assessed against the commissioners personally.

23 A. & E. Enc. of Law, (2nd. Ed) 375, 376; Walker v. Hallett, 32 Ind. 243; Kendall v. Stokes, 3 How. 87.

FRANCIS C. WILSON and DANIEL K. SADLER, both of Santa Fe, for appellee.

Mandamus was the appropriate remedy to compel respondents to issue to relator a salary voucher in payment of his services for the month of October, 1917.

Mechem on Public Officers, Sec. 508, 26 Cyc. 171; State, ex rel. Clancy, v. Hall, N. M. 168, Pac. 715; State v. McQuade, Wash. 79 Pac. 207; Raisch v. Board of Education, 81 Calif. 543; 22 Pac. 890; Ross v. Board of Education, Calif. 122 Pac. 967; State v. Nassly, Minn. 107 N. W. 818; White v. Worth, 126 N. C. 570; 36 B. E. 132; Reynolds v. Taylor, 43 Ala. 420; Sec. 5377, Code 1915; State ex rel Silter v. Education Board 18 N. M. 183.

Writ was properly issued.

See 5, 686 and 1915; High's Extraordinary Legal Remedies, Section 14; State, ex rel. Davis v. Cornell, Neb. 84 N. W. 87; Hutcheson v. Manson, Ga., 62 S. E. 189; Hemphill v. Coulter, Ky. 67 S. W. 3; People, ex rel. Dannat, v. Comptroller of the City of New York, 77 N. Y. 45; People v. Treanor, 44 N. Y. Sup. 328; City of Columbia v. Spigener, S. C., 67 S. E. 552, (554-555.)

The costs were properly assessed against the respondents personally.

State ex rel. Stephens v. Corp. Comsn., 25 N. M. 32

Codification of 1915, Sec. 4282; 26 Cyc. 512-513; Roberts v. U. S. 13 App. D. C. 38, affirmed, 176 U. S. 221; 44 L. Ed. 443; State v. Carlson, Neb., 101 N. W. 1004.

## OPINION OF THE COURT.

ROBERTS, J.  This suit was instituted by the state of New Mexico, at the relation of Henry F. Stephens, by petition in mandamus, praying that the appellants be directed by peremptory writ to issue to him a salary voucher in the sum of $150, covering salary for the month of October, 1917.  Upon the filing of the petition the court below directed issuance of an alternative writ, which was issued and served on the respondents on November 27, 1917.  The respondents in their return to the alternative writ denied that it was their duty to issue to relator a voucher for salary covering the month of October, 1917, and alleged that the services of said relator had been terminated by said State Corporation Commission on September 30, 1917; and, further, by way of amendment, and as a reason urged by them against the granting of a peremptory writ, alleged that such a writ should not be issued because it would prove unavailing, in that the contingent expense account, out of which relator's salary was payable, had been exhausted, having been drawn to balance by midnight of November 30th, the end of the fifth fiscal year, following service upon them of the alternative writ on November 27th.

At the trial, however, it was proven that the action relied upon to terminate the employment of relator as of September 30, 1917, was concurred in by only one of the two commissioners present at the meeting and within the state of New Mexico at such time.  It appeared that at such time, and during all of the month of October, 1917, Commissioner Groves was absent from the state of New Mexico, and was sojourning at San Antonio, in the state of Texas; that Commissioner Williams favored the termination of relator's employment as of September 30, 1917, and Commissioner Montoya opposed such action.

Commissioner Williams, relying upon a motion signed by Commissioner Groves while sojourning in Texas, favoring such action, as chairman of the Commission declared the motion carried. Furthermore, at the trial a power of attorney from Commissioner Groves to Commissioner Williams was offered in evidence as showing authority in Commissioner Williams to cast the vote of Commissioner Groves at such meeting in favor of the action sought to be taken. In addition, as a witness, Commissioner Groves at the trial declared that he at such time affirmed the action that Commissioner Williams had attempted to take by virtue of the authority contained in said power of attorney.

At the trial, however, it was proven that between the time of service upon them of the alternative writ and midnight of November 30th, the close of the fifth fiscal year, the respondents had drawn upon said contingent expense account in an amount in excess of $1,000, and that at the close of the fifth fiscal year, on, to wit, November 30th, the last day thereof, there still being a balance to the credit of the said contingent expense account of approximately $170, according to the books of the State Auditor, the respondents used said balance for the purchase of postage stamps, which admittedly were for use during the sixth fiscal year.

It was further shown that the Commission had issued vouchers against the contingent expense fund, for moneys which should have been paid out of other funds, and that there was a large balance in such other funds.

On February 8, 1918, the court rendered judgment directing the issuance of a peremptory writ commanding the respondents to issue to relator a voucher covering salary for October, 1917, as prayed, and made finding of fact and stated conclusions of law which fully support the judgment. From this judgment an appeal was allowed, without supersedeas.

Appellee, having presented his voucher to the State

JANUARY TERM, 1918.                    37

State ex rel. Stephens v. Corp. Comsn., 25 N. M. 32

Auditor for the issuance of a warrant for presentation
to the State Treasurer for payment, and the State Audit-
or having refused to issue a warrant, upon the ground
that the contingent expense fund for the fifth fiscal year
appeared upon his books as drawn to balance, filed his
motion praying that said appellants be compelled to
amend their return by designating said voucher as pay-
able out of the contingent expense account of said Cor-
poration Commission for the sixth fiscal year instead of
the fifth. The right to such relief was based upon the
fact shown by the record that he had traced into the
contingent expense fund for such year more than suf-
ficient funds of the fifth fiscal year, belonging to such
fund, to pay such claim. The court, after a hearing,
entered an order directing appellants to amend their
return as prayed. From such order appellants appealed,
and were allowed supersedeas.

Appellee has filed a motion to dismiss the appeals
upon the ground that double appeals have been joined.
This question, in view of our decision upon the merits,
need not be considered.

[1] As to the merits: In their brief in this court
appellants do not contend that appellee was discharged
as assistant rate clerk of the Corporation Commission by
order made by the Commission upon the vote of Comis-
sioner Groves under the power of attorney, said Groves
being absent at the time, sojourning in the state of Texas.
This being true, this question may be laid aside, and we
will assume, as appellants apparently have, that Steph-
ens was in the employ of the Corporation Commission
until November 1, 1917; that he was entitled to salary at
the rate of $150 per month for services rendered during
the month of October; that the Commission refused to
draw a voucher for such salary, by which only he could
procure a warrant from the State Auditor.

The first point arising for consideration, therefore,
is as to whether or not mandamus was the appropriate

remedy to compel the issuance to relator by the Corporation Commission of the salary voucher in payment for such services for the month of October, 1917. In 26 Cyc. 171, it is said:

"The remedy which will supersede mandamus may be described in general terms as one competent to afford relief upon the very subject-matter in question, and which is equally convenient, beneficial, and effectual. * * * It has been held that mandamus will lie when other existing remedies are tedious, are not sufficiently speedy, or in case they have become obsolete, or are circuitous."

A similar question was involved in the case of State v. McQuade, 36 Wash. 579, 79 Pac. 207. The respondents, as directors of a school district, refused to issue to relator a warrant covering his salary for one month. The lower court dismissed the petition. The Supreme Court in the course of its opinion said:

"After the filing of the amended return a trial of the issues was entered upon, at which the appellant offered himself and one W. E. Holland as witnesses; their evidence tending to support the right of the appellant to the relief demanded by him. The court, however, after the appellant had testified, and in the course of the examination of Mr. Holland, on motion of the respondents, dismissed the proceedings on the ground that it was not a case in which mandamus would lie; remarking, while giving the reasons for his conclusion, that, if the rule were otherwise, he did not think the evidence offered made a case entitling the appellant to a writ.

"On both questions we think the learned trial judge was in error. By virtue of the statute the writ of mandamus may issue to any inferior tribunal, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; and clearly it was the duty of this school board to draw a warrant for the appellant's salary as a teacher, if any such salary was due him. As his contract with the district provided that he was to be paid by a warrant drawn by the school board on the county treasurer, in no other way was he entitled to receive payment for his services; and, unless he can force the board to act, it is difficult to see how he is going to get paid at all. An action at law against the district will not furnish him relief. The most he could obtain by such an action would be a judgment against the district, which would entitle him to a warant drawn by the directors on the county treasurer. He could not obtain a judgment

which could be collected by execution. If the judgment was not paid. voluntarily—if the directors still refused to act of their own volition—he would yet have to resort to mandamus to secure his rights.

"It would seem, therefore, that in reason the claimant could resort to the remedy of mandamus in the first instance."

To the same effect was Ross v. Board of Education, 18 Cal. App. 222, 122 Pac. 967.

Here there was no question but that appellee had been employed by the Commission as assistant rate clerk at a salary of $150 per month; that he had performed the services required under such employment, and that he was entitled to a voucher therefor clearly. Mandamus was the appropriate remedy to compel issuance of such voucher; in fact, mandamus was the only adequate remedy open to him.

[2] The next question is as to whether the court properly sustained the motion of appellee to compel the amendment of the return by respondents by making upon the voucher issued an indorsement directing payment thereof from the contingent expense account of the sixth fiscal year.

After the appellants had, in compliance with the peremptory writ of mandamus, issued a voucher to appellee, the appellee presented the same to the State Auditor, and the State Auditor refused to issue a warrant for said voucher, for the reason, as stated by him, that the contingent expense account of the State Corporation Commission for the fifth fiscal year appeared upon his books as drawn to balance. Thereupon the appellee, through his attorney, filed his motion praying that the appellants be compelled to amend their return by designating upon said voucher that the same should be payable from the contingent expense account of the sixth fiscal year; and as grounds therefor showed by admitted facts in the case that the appellants had, after the service upon them of the alternative writ of mandamus, drawn vouchers against the same to an amount far in

excess of appellee's claim, and that on the last day of the fifth fiscal year, to wit, November 30, 1917, they had purchased postage stamps in the sum of $168.44, which were for use, and could only be used, during the sixth or ensuing fiscal year. The appellee further showed, by admitted evidence, that there was by specific appropriation an available fund of $900 for the use of the Commission in the employment of an additional stenographer; that said $900 was not used by said Commission for the purpose for which it was appropriated or for any other purpose, and was wholly unexpended at the end of said fifth fiscal year; that said Commission did during the fifth fiscal year employ an additional stenographer monthly by vouchers drawn on the contingent expense account. Having traced into the contingent expense account of the sixth fiscal year funds in excess of the amount of his claim, the appellee urged, and the court below sustained his contention, that he was entitled to have his voucher made payable from the contingent expense account of the sixth fiscal year.

In considering this question it may be well to quote section 5 of chapter 86 of the Session Laws of 1915, as follows:

"At the end of each fiscal year and after any appropriations and expenditures which may be required to be paid out of any particular fund or funds shall have been paid, all the surplus which may remain in any or either one of the particular funds shall be transferred by the State Auditor and Treasurer to the credit of the same fund for the following fiscal year."

When the alternative writ was served upon the respondents it became and was their duty to notify the State Auditor that here was a claim which, in the words of the statute, "might be required" to be paid out of the appropriation for that fiscal year, and to request him to withhold such sum for paying said claim if the court issuing the writ should hold the same was a legitimate indebtedness on the part of the State Corporation Commission. They not only failed to do this, but proceeded to expend the entire balance remaining to

JANUARY TERM, 1918.     41

State ex rel. Stephens v. Corp. Comsn., 25 N. M. 32

the credit of said fund on the books of the State Auditor, and then actually pleaded such fact as reason why the court should deny the relator the relief prayed for. The command of the alternative writ was that they issue to relator a voucher in the sum demanded, or on a date named, which was, to be sure, subsequent to the end of the fifth fiscal year, show cause why they had not done so. Their answer should have spoken as of the date the alternative writ was served upon them, and they could not properly place it beyond their power to comply with the peremptory writ, when issued, and then plead such fact in defense. Their answer constituted no legal justification. High's Extra. Leg. Rem. § 14; State ex rel. Davis v. Cornell, 60 Neb. 694, 84 N. W. 87; Hutcheson v. Manson, 131 Ga. 264, 62 S. E. 189; Hemphill v. Coulter (Ky.) 67 S. W. 3; People ex rel, Dannat v. Comptroller of the City of New York, 77 N. Y. 45; People v. Treanor, 15 App. Div. 508, 44 N. Y. Supp. 528; City of Columbia v. Spigener (S. C.) 67 S. E. 552, 554, 555.

In State v. Cornell, supra, the Supreme Court of Nebraska in its opinion declared the law in a manner peculiarly applicable to the case at bar. It stated:

"Authorities cited by the Attorney General (State v. Babcock, 22 Neb. 33, 33N. W. 709; People v. Needles, 96 Ill. 575; People v. Lippincott, 64 Ill. 256; People v. Swigert, 107 Ill. 404) sustain the view that no lawful claim against an appropriation can come into existence after the end of the period for which the appropriation was made, but beyond this they do not go. Section 19, rat. 3, of the Constitution requires that 'each Legislature shall make appropriations for the expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with such fiscal quarter.' When a fund has been set apart in obedience to the provision quoted, it is, of course, the intention of the Constitution that those who became entitled to any portion of it shall receive such portion, and that at the expiration of the designated period the appropriation shall cease to be effective as to the unexpended balance. Such balance, within the meaning of the Constitution, is the portion of the fund remaining after all proper claims against it have been paid. The legislative authority to draw money from the treasury for the satisfaction of a just claim does not become extinguished by the wrongful refusal of auditing officers to ex-

42      SUPREME COURT OF NEW MEXICO

State ex rel. Stephens v. Corp. Comsn., 25 N. M. 32

ercise their functions within the proper time. A creditor of the state does not forfeit his right to money due him because the state agents refuse to perform duties with which they are charged. The declaration in section 19 aforesaid, that 'all appropriations shall end with such fiscal quarter,' is made on the assumption that the authority given by appropriation bills will be exercised in favor of all persons having valid claims on the treasury. It does not intend that such authority shall cease when, by reason of official misconduct, it has not been exercised to the extent it should have been. The legality of the relator's claim has been judicially established, and it is the duty of the state to pay it—to do now what it should have done before. When a law imposes a duty upon a public officer to do an official act at a particular time, the obligation is ordinarily a continuing one; and the courts will, when it is practicable, coerce performance after the appointed time has gone by."

In Hutcheson v. Manson, supra, decided by the Supreme Court of Georgia, the respondent sought to defeat mandamus by showing that the particular fund out of which relator's claim was payable had been exhausted. The court, after referring to a former decision in which the same defense had been interposed, said:

"Under that decision it is clear that the fact that the ordinary did not have in his possession or control the funds which he had collected from the hire of the misdemeanor convicts, from which to pay petitioner's orders for insolvent costs, as solicitor of the city court, was no reason for denying a mandamus absolute, when it appeared that the ordinary had himself disbursed such funds in violation of the law."

In City of Columbia v. Spigener the court makes a somewhat extensive review of the question, and, after referring to the rule that ordinarily mandamus will not issue to compel the making of a warrant where there are no funds to pay it, said:

"But to apply this rule so as to allow an officer to escape the writ of mandamus when the lack of funds was due to his own wrongful disbursement of them would be to allow the commission of official wrong to excuse the neglect of official duty. When an officer receives public funds which the law requires him to pay to certain persons, such persons, when they have no other adequate legal remedy, are entitled to the writ of mandamus on showing that the officer refuses to disburse as required by law; and the officer

JANUARY TERM, 1918.        . 43

State ex rel. Stephens v. Corp. Comsn., 25 N. M. 32

should not be heard to say that he cannot apply the funds as the law directs, as he has already misapplied them.   The acceptance by the court of such an excuse would make it possible for the officer, by evasion and wrong, to set· at naught the power of the court to protect by mandamus the public credit and the rights of public creditors by requiring of officers prompt compliance with law in the disbursement of public funds."

In People v. Treanor, supra, the respondent took the same position that has been taken by the respondents in this case.   The court said:

"The appellants further contend that a writ of mandamus to compel the payment of the amount due will not issue where there are no funds out of which they can make payment, and that the evidence conclusively shows that there are no such funds.   To permit this contention would be to allow the commissioners to set up their ·own wrongdoing as a defense.   The act provides a specific method for the use of the bonds.   They were 'delivered to said commissioners to be paid out by them at not less than par, in liquidation of the said damages, costs, charges, and expenses of laying out, opening, and constructing the said road, or, at their option, to be sold at not less than par, and the proceeds thereof applied as aforesaid.'   This was the clear mandate of the act, which is the charter of their existence.   It was, at once, their sword and shield.   They could use the bonds as the act indicated.   They could be compelled to no other disposition of them, and their defense, either to an action for a money demand or to an application for a writ of mandamus, would have been that, while they could not dispose of the bonds at par, they were willing to pay them to the contractors in liquidation of their claim.   That they are able to do neither is a result of their own illegal act. * * *

"In our use of the words 'wrongful' and 'illegal,' as applied to the action of the commissioners, we do not intend to imply that their action was occasioned by any moral obliquity on their part, or that they did not act as they thought was for the best interest of the matter in their charge; but we are dealing solely with the legal deductions that must follow their action, and we agree with the views expressed by the learned trial justice, that there is nothing to impugn the uprightness and integrity of the defendants.   It may well be that the commissioners will be subjected by this procedure to imprisonment for contempt, in case of their disobedience of the final judgment; but that is a matter which will receive careful attention when it is presented for consideration, although it cannot be permitted to influence our conclusion."

The appellee showed beyond any question of doubt, however, that, in order to exhaust the contingent ex-

pense account, it was necessary, on the last day of the fifth fiscal year, to purchase postage stamps in excess of the amount of his claim, which stamps were for use, and could only be used, during the sixth fiscal year, and were consequently a legitimate charge against the appropriation for that year. In legal contemplation it is as though the appellee had traced just so much money, instead of postage stamps, into the contingent expense account for the sixth fiscal year.

The question as to the right of the contingent expense fund to reimbursement for the $900 improperly paid out of such fund for the services of a stenographer may be laid aside, for without this amount there was sufficient money in the fund, had it not been diverted for the purchase of stamps for the next ensuing year, to have paid any warrant that might have been issued upon the voucher for relator's salary.

In directing the voucher to be designated as payable from the contingent expense account of the sixth fiscal year, the court, sitting on its equity side, brushed aside all subterfuge, and form and looked at the naked facts as they really were. Its action, in effect, restored to the contingent expense account of the fifth fiscal year for the payment of this voucher, a fund which passed into the contingent expense account for the sixth fiscal year, and which in equity and good conscience should be restored.

[3, 4] It is finally insisted by appellants that the court erred in awarding costs against them. It is well established, however, that where an officer refuses to perform a mere ministerial duty, such as signing a voucher for salary earned, he is liable to relator for costs incurred in compelling the performance of such duty by mandamus proceedings. Code 1915, § 4282; 26 Cyc. 512-513; Roberts v. United States, 13 App. D. C. 38, affirmed 176 U. S. 221, 20 Sup. Ct. 376, 44 L. Ed. 443; State v. Carlson, 72 Neb. 837, 101 N. W. 1004.

At page 513 of 26 Cyc. it is said:

"Public officers are liable in costs for any duty they are required to perform by law."

In the case of Roberts v. United States, supra, it was held that in mandamus proceedings against the Treasurer of the United States, in his official capacity, the fact of his being a public officer did not preclude costs being awarded against him personally, if he were the unsuccessful party.

And in State v. Carlson, supra, the Supreme Court of Nebraska held that where public officers refused to perform a statutory duty, and were compelled to do so by mandamus, the costs would be adjudged against them, where the relator was without fault, though the officers were acting in obedience to an injunction supposed by them to be valid, but which in fact was void for want of power of the court to issue.

In this case the duty of respondents with respect to issuing a voucher to relator was plain, and for almost a year he has been deprived of his salary for the month in question, and has been compelled to resort to mandamus to secure his rights, and, in addition to taxable costs, is compelled to pay attorney's fees. Certainly respondents were properly held for the costs.

For the foregoing reasons the judgment of the district court will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.

### SYLLABUS BY THE COURT.