STATE OF NEBRASKA EX REL. CLARENCE A. H. MEYER, ATTORNEY GENERAL, RELATOR, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT OF THE STATE OF NEBRASKA, ET AL., RESPONDENTS.

176 N. W. 2d 920

Filed May 1, 1970. No. 37479.

Original action. Judgment in part for relator and in part for respondents.

Clarence A. H. Meyer, Attorney General, and Gerald S. Vitamvas, for relator.

Edmund D. McEachen, John S. Zeilinger, and Young, Baird, Holm, McEachen, Pedersen, Hamann & Haggart, for respondents.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an original action brought by the State of Nebraska on the relation of the Attorney General at the express request of the Legislature of the State of Nebraska. It seeks to have certain appropriations vetoed by the Governor declared valid and to uphold certain personal service limitations placed in the appropriation bills by the Legislature.

Five of the appropriation items were included in Legislative Bill 1425 (Laws 1969, c. 481, p. 1987), an act making appropriations for construction, repair, and improvement of state buildings and land acquisition. These items are as follows:

(1) Land acquisition (Medical Center,

University of Nebraska) in the amount of $1,000,000

(2) Land acquisition (University of Nebraska at Omaha) in the amount of 1,350,000

(3) Home Economics facility (East Compus) in the amount of 1,225,000

(4) Remodeling of the Administration Building (Kearney State College) in the amount of 1,500,000

(5) Appropriation for a recreation and activities building (Beatrice State Home) in the amount of 638,400

One of the appropriation items was embraced in Legislative Bill 552 (Laws 1969, c. 466, p. 1619). It was an appropriation of $2,240,000 for a Home Economics facility on the East Campus. No purpose will be served herein by specifically detailing the legislative history of each of these items. The points important for consideration may be raised by general statements.

The Governor presented his budget message and executive budget to the Legislature on January 29, 1969. With relation to the appropriations for the Medical Center, for the Beatrice State Home, the Home Economics facility, and the remodeling of the Administration Building at Kearney State College, specific requests were made to the Governor for such appropriations but the Governor made no recommendations for the same in the budget he submitted to the Legislature. No request was made to the Governor covering land acquisition for the University of Nebraska at Omaha and said item was not included in his budget. In the course of the legislative proceedings these various items were included in the budget by the Legislature. At some stage of the legislative process all of the items above, except item (3), the appropriation of $1,225,000, received at least a two-thirds vote. However, on final passage neither Legislative Bill 1425 nor Legislative Bill 552 received a two-thirds vote. The vote on Legislative Bill 1425 on

final passage was: 28 Ayes, 16 Nays, and 5 Not Voting. The vote on Legislative Bill 552 on final passage was: 30 Ayes, 11 Nays, and 8 Not Voting.

Article IV, section 7, Constitution of Nebraska, provides as follows: "The Governor may, at the commencement of each session, and at the close of his term of office and whenever the Legislature may require, give by message to the Legislature information of the condition of the state, and shall recommend such measures as he shall deem expedient. Within thirty days after the commencement of each regular session he shall present, by message, a complete itemized budget of the financial requirements of all departments, institutions and agencies of the state for the ensuing biennium. Said budget shall be prepared with such expert assistance and under such regulations as may be provided by law. No appropriations shall be made in excess of the recommendation contained in such budget unless by two-thirds vote of the Legislature, and such excess so approved shall not be subject to veto by the Governor."

Article IV, section 15, Constitution of Nebraska, provides as follows: "Every bill passed by the Legislature, before it becomes a law, and every order, resolution or vote to which the concurrence of both Houses may be necessary (except on questions of adjournment) shall be presented to the Governor. If he approves he shall sign it, and thereupon it shall become a law, but if he do not approve, he shall return it with his objections to the House in which it shall have originated, which House shall enter the objections at large upon its journal, and proceed to reconsider the bill. If then three-fifths of the members elected agree to pass the same, it shall be sent, together with the objections, to the other House, by which it shall likewise be reconsidered; and if approved by three-fifths of the members elected to that House, it shall become a law, notwithstanding the objections of the Governor. In all such cases the vote of each House shall be determined by yeas and nays,

to be entered upon the journal. Any bill which shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it; unless the Legislature by their adjournment prevent its return; in which case it shall be filed, with his objections, in the office of the Secretary of State within five days after such adjournment, or become a law. The Governor may disapprove any item or items of appropriation contained in bills passed by the Legislature, and the item or items so disapproved shall be stricken therefrom, unless repassed in the manner herein prescribed in cases of disapproval of bills."

It is to be noted that the above constitutional provision was adopted while this state had a bicameral legislative system. Since that time, under constitutional authority a unicameral system was adopted and has since been in operation. By the terms of Article III, section 1, Constitution of Nebraska, since January 1937, all provisions referring to the bicameral Legislature in the Constitution are applicable to the unicameral Legislature.

Two issues are presented in regard to these appropriations: (1) Were any of the questioned appropriations validly and effectively enacted; and (2) if validly and effectively enacted, were they effectively vetoed by the Governor?

The 1969 Legislature inserted the following provision: "Expenditures for Personal Services shall not exceed $———— during the period July 1, 1969-June 30, 1970, nor $———— during the period July 1, 1970-June 30, 1971," in Legislative Bills 1421, 928, 831, 552, and 1096. Respondents contend that this provision, which they allege appears 480 times in the above bills, constitutes an unlawful limitation on expenditures for personal services. The issues presented relative to these provisions are: (1) Are the provisions advisory only, or are they mandatory; and (2) if mandatory, are they a valid exercise of the power of the Legislature, or do

they constitute an unconstitutional encroachment on the other branches of government?

In the Governor's veto message as to Legislative Bill 1425 he referred to the authority given him by Article IV, section 15, Constitution of Nebraska, which provides for an item or items veto of appropriations contained in bills passed by the Legislature. Here we are dealing with items added to the appropriations bill for the maintenance and upkeep of a state department, institution, or agency, and they are definitely within the ambit of Article IV, section 7, Constitution of Nebraska. It is immaterial whether all of the items were originally presented to the Governor in the budget presentation of those groups or not. As executive head of the state government, the Governor is charged with the responsibility of preparing, with expert assistance, a completely itemized budget for every department, institution, and agency of state government for the ensuing biennium. The budget requirements of Article IV, section 7, Constitution of Nebraska, apply to all departments, institutions, and agencies of the state in being at the commencement of the legislative session. Mekota v. State Board of Equalization & Assessment, 146 Neb. 370, 19 N. W. 2d 633. No new or increased appropriation may be made for any existing organization included in that classification except by a two-thirds vote of the Legislature, and when so made it is not subject to the Governor's veto.

When is an appropriation made? An appropriation is a law and may be adopted only through a bill. A bill is not passed until it receives the necessary affirmative vote on final passage. An appropriation bill is no different in this respect than any other bill before the Legislature. In the case of an appropriation bill, no appropriation is made until its final passage. Until that stage is reached, it is no more than a mere proposal being moved along for further consideration. To be effective as to an item increasing the amount proposed for

any department in the Governor's budget, the bill must receive a two-thirds vote on final passage.

The constitutional language appears so clear to us that there is no room for construction. We said in State ex rel. School Dist. of Scottsbluff v. Ellis, 168 Neb. 166, 95 N. W. 2d 538: "Before rules of construction become available it must be demonstrated that the constitutional provision is not clear as to its meaning and that the intent of the people in adopting the provision can be determined only by construction."

In Elmen v. State Board of Equalization & Assessment, 120 Neb. 141, 231 N. W. 772, this court said: "We are indebted to the suffrage of the people for the adoption of all amendments submitted and indeed for the adoption of the original Constitution which such amendments changed. From this fact it is patent that, where the language employed is plain, the courts should accord to it the meaning which obviously would be accepted by the layman." In that case, the items of increase were included in the appropriation bill by less than a three-fifths vote (which was then the requirement of Article IV, section 7, Constitution of Nebraska). The question there was whether a three-fifths vote for the bill on final passage was sufficient. We held the required vote on final passage was sufficient, and a three-fifths vote on adding the increase was not required. We now state that it is immaterial whether the increase items receive a two-thirds vote at any other stage of the legislative process. Unless the bill including them receives a two-thirds vote on final passage, they cannot constitutionally be included in the bill. It follows that the appropriation bills having been adopted by less than a two-thirds majority vote of all members elected to the Legislature, the questioned appropriations were not validly or effectively enacted, and therefore never become operative. The disapproval of the Governor in effect pointed up this invalidity.

Does the Legislature have the right to apportion the

amount budgeted for personal service expenditures to specific periods within the biennium? Or, to be more accurate, can the Legislature impose a ceiling on annual personal service expenditures? Article III, section 25, Constitution of Nebraska, provides in part: "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued as the Legislature may direct, * * *." Article III, section 22, Constitution of Nebraska, provides as follows: "Each Legislature shall make appropriations for the expenses of the Government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with such fiscal quarter. And whenever it is deemed necessary to make further appropriations for deficiencies, the same shall require a two-thirds vote of all the members elected to each House, and shall not exceed the amount of revenue authorized by law to be raised in such time. Bills making appropriations for the pay of members and officers of the Legislature, and for the salaries of the officers of the Government, shall contain no provision on any other subject."

The object and purpose of such constitutional provisions is to render the departments of state government dependent upon the will of the people as expressed by their duly-elected representatives, the members of the legislative branch of the government, and to require such departments, except as may otherwise be provided in the Constitution, to return to that source at regularly stated intervals for the necessary means of existence, because the people have learned that the very preservation of liberty depends upon the control of the purse by their periodically elected representatives. See State ex rel. Norfolk Beet-Sugar Co. v. Moore, 50 Neb. 88, 69 N. W. 373.

This principle is well stated in Colbert v. State, 86 Miss. 769, 39 So. 65, as follows: "Under all constitutional

governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function; indeed, it is the supreme legislative prerogative, indispensable to the independence and integrity of the legislature, and not to be surrendered or abridged, save by the constitution itself, without disturbing the balance of the system and endangering the liberties of the people. The right of the legislature to control the public treasury, to determine the sources from which the public revenues shall be derived and the objects upon which they shall be expended, to dictate the time, the manner, and the means, both of their collection and disbursement, is firmly and inexpugnably established in our political system. This supreme prerogative of the legislature, called in question by Charles I., was the issue upon which parliament went to war with the king, with the result that ultimately the absolute control of parliament over the public treasury was forever vindicated as a fundamental principle of the British constitution. The American commonwealths have fallen heirs to this great principle, and the prerogative in question passes to their legislatures without restriction or diminution, except as provided by their constitutions, by the simple grant of the legislative power."

Within the limitations of the Constitution, the general authority of the Legislature over the public revenue of the state from taxation is paramount. Without question, the legislative power is supreme in matters relating to appropriations as to which no constitutional restrictions exist.

Article II, section 1, Constitution of Nebraska, provides as follows: "The powers of the government of this state are divided into three distinct departments, the Legislative, Executive and Judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

Article IV, section 6, Constitution of Nebraska, provides as follows: "The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed and the affairs of the state efficiently and economically administered."

Article III, section 6, Constitution of Nebraska, provides for biennial sessions of the Legislature. Article III, section 22, Constitution of Nebraska, requires the Legislature to make appropriations for the expenses of government until the expiration of the first fiscal quarter after the adjournment of the next regular session. Respondents argue that the entire state budget process contemplated by our constitutional provisions is based on biennial budgeting. Respondents argue that the personal services provisions are on an annual basis and are in violation of the requirement for biennial budgeting. We agree with respondents' premise, but do not accept respondents' conclusions.

The various departments of the government submit their appropriation requests to the Governor, who after reviewing them with expert assistance, submits a completely itemized budget for the biennium to the Legislature. In the various hearings by the budget committee of the Legislature, department heads are questioned as to the necessity for and the extent of the programs for which appropriations are requested. These procedures over the years have been used to permit the Legislature to determine the full extent to which appropriations should be made for the operation of the various departments of the state government for the next biennium.

The Legislature actually made the appropriations for the biennium. Respondents do not question its sufficiency. They question the right of the Legislature to impose a ceiling on an annual basis upon the personal services expenditures from that biennial appropriation.

The Legislature has plenary or absolute power over appropriations. It may make them upon such condi-

tions and with such restrictions as it pleases within constitutional limits. There is one thing, however, which it cannot do, and this is inherent in Article II, section 1, Constitution of Nebraska. It cannot through the power of appropriation exercise or invade the constitutional rights and powers of the executive branch of the government. It cannot administer the appropriation once it has been made. When the appropriation is made, its work is complete and the executive authority takes over to administer the appropriation to accomplish its purpose, subject to the limitations imposed. Is the condition imposed an attempt to administer the appropriation?

All authorities are in agreement that it is impossible to fix exact limits in the area of constitutional separation of powers. All states approach the problem on a case-by-case basis. We realize it is possible to impose undue spacing limitations or to carry the imposition of ceilings for varying periods to an extreme. We also realize that the Legislature cannot be permitted to hamper the necessary operation of constitutional officers by unreasonable appropriation restraints. These, however, are not the situations we have before us. We do not believe the imposition of a ceiling for personal services on an annual basis is unreasonable. Most governments operate on a fiscal year basis. The salaries of our public officials are determined on an annual basis. It is within the power of the Legislature to fix the amount it will appropriate for personal services in any state department or agency. The appropriation is strictly in line with the requirements of equalization and uniformity in our constitutional revenue provisions. The Legislature has made the appropriation for the biennium. It has seen fit to divide that portion of the appropriation allocated for personal services by imposing an annual ceiling. This is within the legislative prerogative and is not an unlawful attempt to control the operation of the executive department or to administer the appropriation.

This court in State ex rel. Dales v. Moore, 36 Neb. 579, 54 N. W. 866, inferentially suggested that the Legislature had the power to provide for the lapsation of an appropriation within the biennium. That case held: "No appropriation made by the legislature will lapse before the end of the first fiscal quarter after the adjournment of the next regular session, unless there is a special provision in the act itself to provide that if it is not used by a certain time that it shall lapse." This language clearly implies that the Legislature does have the power to limit an appropriation in a specific manner in the act making the appropriation. See, also, State ex rel. Bullock v. Babcock, 22 Neb. 33, 33 N. W. 709. We determine in this instance that the legislative condition is reasonable and constitutional.

For the reasons given, we declare the challenged portions of Legislative Bills 552 and 1425 invalid and of no force and effect. We further declare that the personal service annual ceiling provisions included generally in the appropriation bills of the 1969 regular session of the Legislature are valid and in full force and effect.

JUDGMENT IN PART FOR RELATOR AND IN PART FOR RESPONDENTS.