The Honorable Paul Riviere Secretary of State State Capitol Little Rock, AR 72201
Dear Secretary Riviere:
I. QUESTIONS PRESENTED
You have requested an official opinion from our office regarding the following questions:
 (a) Is Section 3 of Act 644 of 1981 an unlawful restriction on the authority of the Secretary of State?
 (b) When an appropriation has been approved by the General Assembly, is a requirement that individual expenditures from the appropriation be approved by a Joint Interim Committee an unconstitutional delegation of legislative authority?
 (c) When an appropriation has been approved by the General Assembly, is a requirement that individual expenditures from the appropriation be approved by a Joint Interim Committee an unconstitutional interference with the executive branch by the legislative branch?
As indicated in your letter, these questions are raised by Act 644 of 1981, which is formally entitled: "AN ACT TO REAPPROPRIATE THE BALANCES OF CAPITAL IMPROVEMENT APPROPRIATIONS FOR THE OFFICE OF THE SECRETARY OF STATE; AND FOR OTHER PURPOSES."
As noted in your questions, your concern focuses in Section 3 of the Act, which provides:
 SECTION 3. None of the appropriations provided in Item 1 of Section 1 of this Act shall be used without having first sought and received the advice of the Joint Interim Committee on Legislative Facilities.
The referenced Item 1 of Section 1 appropriates over $1,600,000 for "renovation, repairs, replacement, reconstruction, restoration, constructing, improving, installing, and all other related costs of the State Capitol Building and the Capitol Hill Building. . . ."
Your letter further referenced Act 572 of 1973, which, in pertinent part, authorizes the Joint Interim Committee on Legislative Facilities to: administer all provisions of this Act relating to repairs, improvements, and furnishings of committee rooms and legislative facilities in the State Capitol Building. . . .
The questions posed for consideration indeed merit careful and thoughtful reflection, as they raise issues which are constitutional in dimension and substantial in degree.
II. CONSTITUTIONAL AND STATUTORY PROVISIONS
As a necessary preface to an analysis of the legal issues raised, a survey of the pertinent provisions of Arkansas' Constitution and statutes must be made.
The Joint Interim Committee on Legislative Facilities, referred to above, was established pursuant to Ark. Stat. Ann. 4-141 (Repl. 1976).
It goes without saying that the Secretary of State is an officer of the executive branch of government. Amendment No. 56, 1. One of the duties vested in the Secretary of State is to serve as custodian of the State Capitol. Ark. Stat. Ann. 5-202 (Repl. 1976).
The constitutional provisions which may be invoked in light of Act 644 of 1981 are few in number, but fundamental in nature:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another. Art. 4, 1
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted. Art. 4, 2
 The legislative power of the people of this State shall be vested in a General Assembly. . . . Amend. No. 7, 1
 The Executive Department of this State shall consist of a Governor, Lieutenant Governor, Secretary of State, Treasurer of State, Auditor of State, Attorney General, and Commissioner of State. . . . Amend. No. 56, 1
 No money shall be drawn from the treasury except in the pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years. Art. 5, 29.
No money shall be paid out of the treasury until the same has been appropriated by law, and then only in accordance with said appropriation. Art. 16, 12.
 III. THE DOCTRINE OF SEPARATION OF POWERS: GENERAL CONSIDERATIONS
The principle of separation of powers occupies a place of prominence in American government, both national and state, which cannot be overlooked. The highest tribunal in our land, the United States Supreme Court, has long recognized that the doctrine of separation of powers is critical — indeed vital — to the continued viability of our government and our nation:
 The doctrine of separation of powers was adopted by the Convention of 1787, not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was, not to avoid friction, but, by means of the inevitable friction incident to the distribution of governmental powers among three departments to save the people from autocracy. Myers v. United States, 272 U.S. 52, 293, 47 S.Ct. 21, 84 (1926)
The important of the doctrine of separation of power cannot be overemphasized, as reflected in the comments of James Madison, one of the Constitution's original drafters:
 It will not be denied that power is of an encroaching nature, and that it ought to be effectively restrained from passing the limits assigned to it. The Federalist, No. 48.
Madison further indicated his belief that, were it necessary to select only one, the principle of separation of powers must be the most fundamental precept in the Constitution:
 If there is a principle in our Constitution, indeed in any free Constitution, more sacred than another, it is that which separates the legislative, executive, and judicial powers. 1 Annals of Congress 581.
The doctrine has also long been a part of Arkansas' form of government. Indeed, Arkansas judicially recognized the principle in her first year of statehood. See Hawkins v. The Governor,1 Ark. 50 (1837). In Hawkins, the Supreme Court stated:
 The duties of each department are such as belong peculiarly to it, and the boundaries between their respective powers or jurisdictions are explicitly marked out and defined. For any one department to assume powers or exercise of jurisdiction properly belonging to any other department is a gross and palpable violation of its own constitutional duty. 1 Ark. at 591
In the 145 years since Hawkins, the separation of powers doctrine has not faltered, nor has its importance been diminished; rather the doctrine has been reaffirmed and bolstered. See Oates v. Rogers, 201 Ark. 335, 144 S.W.2d 437 (1940); Farris v. Arkansas Game and Fish Commission, 228 Ark. 776, 310 S.W.2d 231 (1958); Rockefeller v. Hogue, 244 Ark. 1029, 429 S.W.2d 85 (1968); Federal Express Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979).
In Oates v. Rogers, the Arkansas Supreme Court undertook the task of thoroughly examining the doctrine of separation of powers before declaring a statute void which purported to create a separate office of collector of taxes and authorize certain judges to appoint such collector. Therein, the Court cites and quotes with approval from Springer v. Phillipine [Philippine?] Islands,277 U.S. 189, 48 S.Ct. 480 (1927):
 Some of our state Constitutions expressly provide in one form or another that the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other. Other Constitutions, including that of the United States, do not contain such express provision. But it is implicit in all, as a conclusion logically following from the separation of the several departments. 144 S.W.2d at 458
Accordingly, Arkansas' doctrine of separation of powers is explicit, see Ark. Const. Art. 4, 2, whereas that of the United States remains implicit in the Constitution. Since our Constitution explicitly recognizes separation of powers, it necessarily follows that less "play in the joints" can be tolerated than would be allowed if the doctrine were only implicit. Acknowledging this and reaffirming Arkansas' continued commitment to the doctrine, our Supreme Court in Wells v. Purcell,267 Ark. 456, 592 S.W.2d 100 (1979), recently had the following to say:
 Neither of the three separate departments of government is subordinate to the other and neither can arrogate to itself any control over either one of the others in matters which have been confided by the Constitution to such departments. 592 S.W.2d at 104
The classic textbook division of the powers of the legislative and executive branches is well known but bears repeating; the legislature makes the laws and appropriates state revenues, while the executive administers the laws and expends the appropriations. See Springer v. Phillipine [Philippine?] Islands, 277 U.S. 189,48 S.Ct. 400, 72 L.Ed. 845 (1928); State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160 (La. 1977); McManus v. Love, 179 Colo. 218, 499 P.2d 609 (1972); C.J.S. Const. Law 130.
Recognizing the fundamental nature of the separation of powers doctrine and articulating the classic dichotomy between the legislative and executive branches of government, in Federal Express Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979), the Supreme Court stated:
 Our government is composed of three separate and independent branches: legislative, executive and judicial. Each branch has certain specified powers delegated to it. The legislative branch of State government has the power and responsibility to proclaim the law through statutory enactments. . . . The executive branch has the power and responsibility to enforce the law as enacted and interpreted by the other two branches. The "Separation of Powers Doctrine" is a basic principle upon which our government is founded, and should not be violated or abridged. 578 S.W.2d at 7.
See also Cochran v. Black, 240 Ark. 393, 400 S.W.2d 280 (1966); City of Sand Springs v. Department of Public Welfare, 608 P.2d 1139
(Okl. 1980).
As an addendum to the general consideration regarding the separation of powers doctrine, mention must be made of two basic interpretational preferences. First, any doubt as to the constitutionality of an act must be resolved in favor of the validity of the act. E.g., Hooker v. Parkin 235 Ark. 218,352 S.W.2d 534 (1962). Second, the State Legislature has absolute power and authority to legislate in all fields unless prohibited from doing so by the State Constitution. Id. at 222. See also Rockefeller v. Hogue, 244 Ark. at 1041.
IV. DISCUSSION OF QUESTIONS PRESENTED
As previously noted, the Legislature's delegated authority includes power to make appropriations, the funds of which must be paid in accordance with the particular appropriation in question. Art. 5, 29 and Art. 16, 12. Obviously, the constitutional provisions dealing with appropriations are not without purpose. It thus appears that the primary purpose of the above provisions of the Constitution is to prevent the expenditure of the people's tax money without having first procured their consent, expressed in legislative enactments which do not contravene the constitutional provisions. Director of Bureau of Legislative Research v. Mackrell, 212 Ark. 40, 46, 204 S.W.2d 893 (1947).
Although the power of the Legislature to appropriate is beyond question, it does not follow that a legislative body retains the right to administer a previously approved appropriation. State ex rel. Meyer v. State Board of Equalization and Assessment, 185 Neb. 490,176 N.W. 920 (1970), provides authority for this proposition. As the court succinctly stated:
 The Legislature has plenary or absolute power over appropriations. It may make them upon such conditions and with such restrictions as it pleases within constitutional limits. There is one thing, however, which it cannot do, and this is inherent in Article II, Section I, Constitution of Nebraska. It cannot through the power of appropriation exercise or invade the constitutional rights and powers of the executive branch of government. It cannot administer the appropriation once it has been made. When the appropriation is made, its work is complete and the executive authority takes over to administer the appropriation to accomplish its purpose, subject to the limitations imposed. 185 Neb. at 499-500.
Other courts have been equally adamant in denouncing post-appropriation tampering by legislatures. See Anderson v. Lamm, 579 P.2d 260 (Colo. 1978), holding that although an appropriation act can properly specify what funds can be spent for, provisions which permit expenditures of such funds only on approval of a legislative committee violate executive prerogatives.
Anderson v. Lamm, supra, squarely addresses and disposes of any notion that a state legislature may hold in abeyance the spending of funds validly appropriated pending the approval of [a] legislative committee. That case dealt with a Colorado statute which would give a legislative committee a "close supervisory role" over the administration of appropriated funds. Id., at 579 P.2d 627.
Accordingly, it matters not whether the post-appropriation legislative entanglement be couched in terms of "approval" or "advice." First, while Act 644 speaks of "advice," it imposes a mandatory requirement that the "advice" be sought and secured before any of the funds are actually spent. Indeed, the co-chairman of the Committee has unequivocally stated:
"I am of the opinion that the intent of (Section 3 of Act 644) was that the Legislative Facilities Committee review SPECIFIC ITEMS AND AMOUNTS in open, regular or called meetings." Letter to Secretary of State Paul Riviere from Rep. John Miller, dated August 7, 1981. Thus, the "advice" must be secured before every individual expenditure, no matter how small. The "advice" will necessarily be required on a frequent, almost daily basis. Continually seeking such "advice" will give the Committee a close supervisory role, as discussed in Anderson v. Lamm. Indeed, subsequent to receipt of your opinion request, we have been informed that the Department of Finance and Administration has refused to pay certain bills incurred by your office, based on the requirements of Act 644 that you first receive legislative "advice."
Second, we cannot ignore the fact that the "advice" of the Committee may be read as a practical matter to mean "approval." Courts have recognized that the retention of authority by a legislative committee over executive branch functions may well result in the legislative committee attempting to "influence or dictate" the way the executive carries out its functions. State ex rel Barker v. Manchin, 279 S.E.2d 622, 632 (W.Va. 1981). Further, only the intrepid will refuse to follow the legislative "advice," knowing that future appropriations may well depend on whether the legislative "advice" is followed. As one court has noted:
 "The statutory scheme brings to mind the Old Testament quotation from Job 1:21, `The Lord gave and the Lord hath taken away.'" Id. at 633. Having once secured legislative approval of an appropriation, an executive cannot be required to submit to the approval of a legislative committee for a second time. Thus, the existence of any post-appropriation legislative involvement is constitutionally suspect. As stated in Monier v. Gallen, 120 N.H. 333, 414 A.2d 1297 (1980):
 "Any administrative activities delegated to (a) legislative fiscal committee come within the twilight zone of constitutionality."
In State ex rel. Barker v. Manchin, the West Virginia Supreme Court aptly characterized legislative review devices similar to that in question:
 Such a mechanism for legislative review of executive action may properly be called an "extra-legislative control device" for it permits the Legislature to act as something other than a legislative body to control the actions of other branches. This is in direct conflict with our constitutional requirement of separation of power. The power of the Legislature in checking other branches is to legislate. 279 S.E.2d at 633.
Here, the requirement of Act 644 that the Secretary of State seek and secure the advice of the Committee, in effect, reverses the constitutional concept of government where the Legislature enacts the law and the executive implements it. Cf. State ex rel. Barker v. Manchin. Under Act 644, the Secretary of State is forced to propose a measure (i.e., what money will be spent for) which is then reviewed (i.e., approved or "vetoed") by the Committee.
It has been held that a legislature may exercise administrative functions, but only those incidental to the full and effective exercise of its legislative powers. Aiken County Board of Education v. Knotts, 262 S.E.2d 14, 17 (S.C. 1980). As applied to the matter at hand, the post-appropriation "advice" required by Act 644 of 1981 can hardly be considered an exercise incidental to full exploitation of legislative powers. The requirement of the Committee's advice is not limited to merely legislative facilities, but extends to ANY MONEY spent for ANY WORK performed anywhere in the State Capitol or the Capitol Hill Building.
While the Arkansas Supreme Court has not yet faced the precise questions you have posed, the Court has unequivocally endorsed a strict, explicit separation of powers, see Oates v. Rogers, and has shown no hesitation in striking down Legislative action which "would strike a serious blow to the checks and balances that exist in Arkansas government, severely limiting the constitutional authority of the executive branch of government." Wells v. Riviere, 269 Ark. 156, 599 S.W.2d 375 (1980). The strict interpretation given to the doctrine of separation of powers by the Arkansas Supreme Court, and the overwhelming weight of authority from the Courts of sister states lead me to the inescapable conclusion that the Section 3 of Act 644 simply cannot pass constitutional muster.
Accordingly, the answers to your questions (a) and (c) are both in the affirmative. Section 3 of Act 644 of 1981 is an unlawful restriction on the authority of the Secretary of State. When an appropriation has previously been approved by the General Assembly, a requirement that individual expenditures be approved by a legislative committee is an unconstitutional interference with the executive branch.
Regarding the issue of an unlawful delegation of Legislative authority to the Committee, since the power of the Legislature is fully exhausted once an appropriation has been made, the "delegation of authority" issue becomes effectively moot at that point. See Meyer, supra. Lacking any administrative authority over an appropriation once made, the Legislature in such cases has nothing to delegate to the committee. A fraction of the Legislature cannot do what that body as a whole is powerless to do. However, assuming for argument that the Legislature has authority to act or require advice, a committee composed of fewer than all legislators cannot constitutionally take action which is binding on the whole body. In such an instance, an argument can be made of the unconstitutional delegation of legislative authority. The Legislature may not delegate its lawmaking authority to a smaller body and thereby evade the requirement for action by a majority of both houses. Opinion of the Justices,431 A.2d 783, 788 (N.H. 1981); State v. A.L.I.V.E. Voluntary,606 P.2d 769 (Alaska (1980). A similar problem with such a delegation of legislative authority is that "control of governmental actions has been placed in the hands of a few individuals who are answerable only to local electorates, not in the hands of executive officers who are elected by the electorate at large." State ex rel. Barker, 279 S.E.2d at 635. In other words, the legislative check upon the executive must be exercised by the legislature acting as a whole, not by a few legislators. For these reasons, the answer to your question(b) is in the affirmative. The Legislature may not constitutionally require that the expenditure of appropriated funds be approved a second time by an interim legislative committee.
V. CONCLUSION
In light of the foregoing considerations, we are constrained to opine that Section 3 of Act 644 of 1981 violates Art. 4, 1 of the Arkansas Constitution, which provides for the explicit separation of powers. Specifically, the requirement that the Secretary of State first seek and secure the "advice" of the Joint Interim Committee on Legislative Facilities prior to expending any funds appropriated in Act 644 of 1981 violates the separation of power doctrine by injecting the legislative branch into the sphere of authority reserved to the executive branch under Article 14 of our Constitution.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General David L. Williams.